FILED

08/04/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0549

DA 25-0549

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 182N

IN RE THE MARRIAGE OF:

JOSHUA FERRAZZANO,

     Petitioner and Appellee,

  and

KELLY O'CONNELL
(f/k/a KELLY FERRAZZANO),

     Respondent and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DR-24-71(C)
Honorable Heidi J. Ulbricht, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

         Kelly O'Connell, Self-Represented, Kalispell, Montana

     For Appellee:

         Jason T. Holden, Katie R. Ranta, Faure Holden Henkel Terrazas, PC,
Great Falls, Montana

Submitted on Briefs: March 25, 2026
Decided:  August 4, 2026

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    Kelly O'Connell, f/k/a Ferrazzano (O'Connell), appeals from the May 14, 2025 Decree of Dissolution, Findings of Fact, and Conclusions of Law entered in the Eleventh Judicial District Court, Flathead County, as well as from the denial of numerous post-trial motions. We affirm.

¶3    O'Connell married Joshua Ferrazzano (Ferrazzano) in 2011.[1] Ferrazzano petitioned for dissolution of the marriage on February 5, 2024. The couple share two minor children, and the court approved the parties' Stipulated Parenting Plan. O'Connell and Ferrazzano owned a home together in Trego, Montana (Trego Property), appraised at $750,000 with an outstanding mortgage of $390,000. The Decree of Dissolution stated that Ferrazzano would have the opportunity to purchase the home within 90 days or sell the home, with the parties splitting the equity.

¶4    On April 16, 2024, the District Court issued a scheduling order for discovery. Pursuant to the order, the parties had until July 19, 2024, to complete discovery.

---

[1] We note that O'Connell failed to provide transcripts of the proceedings in District Court. *See* M. R. App. P. 8(3) (outlining the appellant's duty to provide transcripts of the proceedings). Thus, our review is confined to the District Court record.

2

O'Connell, through counsel, successfully obtained an extension until September 17, 2024, to complete discovery. During the discovery window, Ferrazzano produced extensive documentation regarding financial assets, the finances of the production company he owns a 50% membership interest in, and responded to O'Connell's interrogatories. O'Connell also subpoenaed financial institutions. On December 6, 2024, O'Connell, now representing herself, moved to compel a forensic accounting and full financial disclosure. At a January 3, 2025 hearing, the District Court denied the motion, which was filed after the applicable discovery deadlines lapsed.[2] O'Connell filed a series of motions after both her attorney withdrew and the discovery deadline lapsed. These motions sought further discovery, but many were duplicative of the information already sought and obtained through discovery or subpoenas of relevant financial institutions.

¶5 On May 23, 2024, O'Connell filed a contested motion to join Ferrazzano's father, the sole living trustee of a trust which owned a property in Whitefish, Montana (Whitefish Property), until 2024. The parties never possessed an ownership interest in the Whitefish Property but did reside there on occasion without paying rent. They also provided some upkeep and made improvements. She contended the parties considered the property a marital asset and had made improvements to the property, granting O'Connell a beneficial interest. However, O'Connell later moved to withdraw her motion "[a]fter further discussion and discovery[.]" The court granted O'Connell's motion to withdraw.

---

[2] In the absence of transcripts, we can only rely on the minute entry for this date wherein the District Court noted that O'Connell's motion was untimely because discovery had closed.

¶6     The District Court assessed the value of the marital estate.  The parties' situation is admittedly obscured by financial assistance and supportive interventions from Ferrazzano's parents or their trust which served to assist the parties in maintaining their lifestyle with bridge loans, allowing them to live in the Whitefish Property, and other injections of funds during their marriage.  Ferrazzano also received post-separation gifts from his father.  The District Court ultimately determined the marital estate consisted of the custodial accounts of the children; the Trego Property; Ferrazzano's 50% membership in a Los Angeles, California, production company, World War Seven Studios, LLC (WW7); no investment or retirement accounts; various vehicles; minor cryptocurrency holdings; an assortment of bank accounts; and significant debt.

¶7     WW7 produces commercials and owns no real property.  Ferrazzano handles bidding, scheduling, planning, client interfacing, and other tasks involved in producing commercials.  His business partner, David Shafei (Shafei), who owns the other 50% interest in WW7, directs the commercials.  After several years of sharing director fees, Shafei and Ferrazzano agreed in 2020 that Shafei alone would receive those fees.  Because WW7 operates on a service-based model, income is irregular and precarious: some months the company may secure one or more jobs but in other months WW7 may have no ongoing projects.  Shafei and WW7's Chief Financial Officer testified that WW7 fronts up to half of the production costs.  Payment occurs once WW7 completes a project and, even then, full payment may be delayed further by sequential liability provisions requiring the principal agency be paid before paying WW7.

¶8 Daren Mesrobian (Mesrobian) presented a business valuation of Ferrazzano's interest in WW7. There are two values for Ferrazzano's share: an applicable price as determined by WW7's operating agreement and a fair market value (FMV) of $310,000. The applicable price refers to the value ascribed to the share under WW7's operating agreement in the event of an "involuntary transfer." Per the terms of the operating agreement, an involuntary transfer includes "distribution pursuant to an involuntary liquidation, transfer or disposition in connection with a divorce or settlement decree or agreement." Further, the operating agreement provided that "the applicable price shall not exceed the capital account of the interest subject to the involuntary transfer." In other words, the applicable price could not exceed the value of Ferrazzano's capital account, which at the date of valuation in February 2024 was $197,000. By August 2024, that value had increased to $220,000. As for the FMV, Mesrobian analyzed WW7 from an income approach and a market approach. He determined WW7's FMV was $970,000 and thus Ferrazzano's one-half interest had an initial FMV of $485,000. After deducting 15% for lack of control and 25% for lack of marketability, Mesrobian arrived at a FMV for Ferrazzano's stake in WW7 of $310,000.

¶9 O'Connell did not offer any competing valuation of WW7. The District Court concluded Mesrobian's valuation was reasonable and derived from generally accepted accounting principles. As provided by WW7's operating agreement, the court found the most Ferrazzano could receive from liquidating his interest was the value of his capital account. Given the fluctuations of WW7's income, the court averaged the $197,000

5

February 2024 valuation of Ferrazzano's capital account and the $220,000 August 2024 valuation and valued his interest in WW7 at $208,500. Instead of ordering Ferrazzano to liquidate his interest in WW7, potentially depriving him of future income, the court ordered he pay O'Connell an equalization payment of $104,250—50% of the value of his interest in WW7—for O'Connell's contributions as a homemaker and stay-at-home mother which enabled Ferrazzano to develop WW7.

¶10 Ferrazzano also owned the now-defunct Swamp Creek LLC. While funds may have moved in and out of an account in Swamp Creek LLC during the time of the parties' marriage, the financial disclosures in the record indicated Swamp Creek LLC's remaining asset was $1,732.03 in a bank account. Evidence also showed Swamp Creek LLC held $3,815.59 in debt. The dissolution decree awarded this net loss to Ferrazzano.

¶11 The parties possessed various bank accounts, credit cards, loans, and other debt. Their total debt exceeded the value of any money held in their bank accounts. O'Connell's attorney had also asserted a lien of $18,544.67 against her which would attach to any decision, judgment, or other proceeds in O'Connell's favor, including any interest in the Trego Property. O'Connell had also accrued $25,000 in credit card debt paying litigation related expenses. The court ordered Ferrazzano to pay the attorney's lien and her credit card debt.

¶12 O'Connell requested $8,000 per month in combined child support and spousal maintenance. She claimed she could not survive on the $5,000 per month she received under the parties' interim agreement. Ferrazzano also paid nearly $13,000 in living

6

expenses for the Trego Property, as well as making vehicle payments, insurance payments, and credit card payments during that time to O'Connell's benefit. O'Connell has a degree in communications, does not have physical or other limitations which would prevent her from working, and was pursuing a real estate license which she testified would earn her $80,000 per year within a few years. The children were in school full-time and the parties had agreed to a 50-50 parenting schedule. The District Court found O'Connell "has the education, physical ability, and time to find and maintain full-time employment." In summary, the court determined, "[c]onsidering the substantial sum of cash that Kelly has already received while incurring no living expenses or bills related to the marital estate, the sums she will receive from the distribution of the marital estate, and her ability to support herself through appropriate employment, maintenance is not appropriate."

¶13 After extensive litigation and trial on March 3, 2025, the District Court decreed the parties' marriage dissolved on May 14, 2025. Ultimately, the court concluded:

> [N]either party can continue living the lifestyle they had during the marriage. The parties lived beyond their means and neither saved any money for retirement nor otherwise. There is no evidence before the [c]ourt either party objected to the state of their finances during the marriage. Rather, both knew there was no money saved for the future. Both [Ferrazzano] and [O'Connell] must work outside the home. However, the [c]ourt's property division allows both parties to adequately meet their reasonable needs.

The final marital estate distribution awarded O'Connell "almost $300,000 in cash" and her newer vehicle with zero debt while assigning the entirety of the couple's marital debt and O'Connell's litigation-related debt to Ferrazzano. Ferrazzano was granted 90 days to purchase the Trego Property outright. The court calculated Ferrazzano's payments to O'Connell during the separation totaled $71,000.

7

¶14 O'Connell then filed at least 30 post-trial motions. The court denied these motions, concluding that her filings "essentially revisit her previous contentions with new theories and arguments about the [c]ourt's interpretation and application of the law."

¶15 On appeal, O'Connell raises several issues which we consolidate dispositively as follows: (1) whether the District Court abused its discretion in equitably dividing the marital estate; (2) whether the District Court abused its discretion in denying O'Connell's request for maintenance; and (3) whether the District Court violated O'Connell's due process rights. We address these issues in turn.

**Equitable Division of the Marital Estate**

¶16 Section 40-4-202, MCA, vests the district court with broad discretion to apportion the marital estate in a manner equitable to each party under the circumstances. *In re Marriage of Funk*, 2012 MT 14, ¶ 6, 363 Mont. 352, 270 P.3d 39. We review a district court's division of marital property to determine whether the court's findings of fact are clearly erroneous and the conclusions of law are correct. *In re Marriage of Funk*, ¶ 6. A finding of fact is clearly erroneous if it is not supported by substantial evidence, the district court misapprehended the effect of the evidence, or our review of the evidence convinces us that the district court made a mistake. *In re Marriage of Tummarello*, 2012 MT 18, ¶ 21, 363 Mont. 387, 270 P.3d 28 (citation omitted).

¶17 Absent clearly erroneous findings, we will affirm a district court's division of marital property unless we identify an abuse of discretion. *In re Marriage of Funk*, ¶ 6. A court abuses its discretion if it acted arbitrarily without employment of conscientious

judgment or exceeded the bounds of reason resulting in a substantial injustice. *In re Marriage of Tummarello*, ¶ 21. "As we have stated previously, each case must be examined individually, with an eye to its unique circumstances." *In re Marriage of Funk*, ¶ 6 (citing *Marriage of Spawn*, 2011 MT 284, ¶ 9, 362 Mont. 457, 269 P.3d 887).

¶18 O'Connell takes issue with several aspects of the District Court's decree dividing the marital estate.

¶19 First, O'Connell claims the District Court failed to account for her monetary and labor contributions to improve the Whitefish Property. Ferrazzano asserts O'Connell waived this by withdrawing her motion in the proceedings below. "Waiver is a voluntary and intentional relinquishment of a known right, claim or privilege, which may be proved by express declarations or by a course of acts and conduct which induces the belief that the intent and purpose was waiver." *VanDyke Constr. Co. v. Stillwater Mining Co.*, 2003 MT 279, ¶ 15, 317 Mont. 519, 78 P.3d 844 (citation omitted). To establish waiver, the party asserting waiver must demonstrate the other party's knowledge of the existing right, acts inconsistent with that right, and resulting prejudice to the party asserting waiver. *VanDyke*, ¶ 15.

¶20 Here, Ferrazzano has adequately demonstrated O'Connell waived her right to join the trustee owner of the Whitefish Property. First, the record is clear that O'Connell considered the possibility of joining the trustee by filing her motion to join. Second, she withdrew her motion upon review of the evidence produced in discovery and while represented by an attorney, an action inconsistent with that right. Finally, by withdrawing

the motion, O'Connell prevented the District Court from considering—and, indeed, Ferrazzano from meaningfully contesting—her claim during the proceedings below; requesting this now would no doubt prejudice Ferrazzano. We will not put a district court in error for failing to address an issue or argument that was not made before it. *In re Marriage of Cini*, 2011 MT 295, ¶ 24, 363 Mont. 1, 266 P.3d 1257. Accordingly, we agree O'Connell has waived this claim and will not address it now on appeal.

¶21 Second, O'Connell challenges the District Court's findings regarding the Northern Trust Account, the children's custodial accounts, Ferrazzano's cryptocurrency holdings, the finances of Swamp Creek LLC, and the parties' future economic potentials. Additionally, she alleges financial records exist which are unverified or inaccurate. These claims are all without merit.

¶22 Here, O'Connell conducted discovery and subpoenaed various financial institutions to obtain a full financial disclosure of the parties' assets. The Northern Trust Account in Ferrazzano's name contained $1,462.47 and was, per the Stipulated Parenting Plan, awarded to Ferrazzano with the express purpose of providing for their children's education "until the balance is zero[.]" Likewise, the children's custodial accounts, also held in Ferrazzano's name, are subject to the Stipulated Parenting Plan which requires they be used for the benefit of the children. "Parties are bound by stipulations made in open court." *In re Marriage of Jakkola*, 267 Mont. 450, 453, 884 P.2d 783, 785 (1994). Thus, we find no error in the District Court's findings regarding these two assets.

¶23 Further, her claims regarding the cryptocurrency holdings and Swamp Creek LLC assets likewise fail. She did not object to Ferrazzano's disclosures of his cryptocurrency holdings at trial. As for any value remaining in Swamp Creek LLC, the disclosures represented the remaining balance in a bank account and the outstanding debt, which exceeded the value of that asset. O'Connell did not object to the admission of the Swamp Creek LLC records. Without transcripts, any dispute as to the accuracy of these disclosures during trial is not properly before this Court. O'Connell's failure to object signals she acquiesced to the introduction of this evidence and we will not address this alleged error. *State v. Gray*, 2004 MT 347, ¶ 20, 324 Mont. 334, 102 P.3d 1255. Thus, nothing in our review of the record here suggests the District Court's findings regarding these assets were in error.

¶24 O'Connell's claim regarding the parties' future economic earning potential also fails. The court determined, based on O'Connell's own disclosures regarding her physical and educational capabilities, that O'Connell had the potential to earn a healthy income as a real estate agent—her intended vocation. We conclude this finding was not clearly erroneous.

¶25 Nothing in the record suggests the District Court's findings were made in error or based upon an incorrect, incomplete, or unverified accounting of the marital estate. O'Connell's claims to the contrary are speculative and specious. The record reflects that the division of the marital estate forgives O'Connell's debts and provides an equitable share of the marital estate as a whole based upon consideration of the relevant § 40-4-202, MCA,

factors. Accordingly, absent any erroneous findings of fact, we cannot say the District Court abused its discretion in apportioning the marital estate.

**Spousal Maintenance**

¶26 Absent clearly erroneous findings of fact, we review a district court's award of spousal maintenance for an abuse of discretion. *In re Marriage of Rudolf*, 2007 MT 178, ¶ 15, 338 Mont. 226, 164 P.3d 907 (citations omitted).

¶27 A district court may award maintenance only if it finds that the spouse seeking maintenance lacks sufficient property to provide for the spouse's reasonable needs and is unable to be self-supporting through appropriate employment. Section 40-4-203(1), MCA. The court must consider resources of the party seeking maintenance, including the apportionment of marital property to that party and the party's independent ability to meet their needs; the time necessary to acquire sufficient education or training to find appropriate employment; the standard of living established during the marriage; the duration of the marriage; the age and the physical and emotional condition of the party seeking maintenance; and the ability of the party from whom maintenance is sought to meet their own needs while also providing maintenance. Section 40-4-203(2), MCA.

¶28 Here, O'Connell's argument regarding spousal maintenance reiterates her argument regarding the parties' future economic potential. We likewise reiterate our conclusion that the District Court's findings that the division of the marital estate adequately provides for O'Connell's reasonable needs and that she is able to be self-supporting through appropriate employment were not clearly erroneous. The District Court considered the factors under

§ 40-4-203(2), MCA, and its findings pursuant to those factors were not clearly erroneous. Accordingly, the District Court did not abuse its discretion in declining to award spousal maintenance to O'Connell.

**Due Process**

¶29 O'Connell argues the District Court violated her due process rights by denying her the opportunity to conduct discovery, admitting a purportedly fictious "Exhibit 26" which was not provided to her, allegedly suppressing her filings by "rapidly" denying her post-trial motions without holding hearings or providing analysis, and excusing Ferrazzano from responding to some of her filings.[3]

¶30 Our review of an allegation of due process is plenary. *In re Marriage of Cini*, ¶ 15. However, despite couching her argument in an alleged denial of due process, our review of the record indicates O'Connell is alleging defects in the discovery process and the District Court's trial administration. We review trial administration decisions left to the discretion of a district court for an abuse of discretion. *In re Marriage of Sampley*, 2015 MT 121, ¶ 6, 379 Mont. 131, 347 P.3d 1281. This includes a district court's rulings

---

[3] O'Connell also alleges the District Court failed to docket her proposed findings of fact and conclusions of law. Ferrazzano submitted his proposed findings of fact and conclusions of law on March 17, 2025, and O'Connell filed her proposed order on April 1, 2025. *See also* Doc. 125, ex. A (showing both proposed orders as filed on those dates, respectively, without docket numbers). The District Court, contrary to O'Connell's argument, in fact considered and ruled on these proposed orders when it entered the Decree of Dissolution at issue in the instant case. Our review of the Decree, in the context of the submitted proposed orders from both parties, suggests the court not only considered but even adopted some of O'Connell's proposals in the final Decree. O'Connell's due process argument, as it relates to her proposed findings of fact and conclusions of law, constitutes a collateral attack on the Decree of Dissolution itself; her argument misrepresents the record and is duplicative of the issues we have already decided above. We need not address it again here.

13

on discovery, *Hawkins v. Harney*, 2003 MT 58, ¶ 17, 314 Mont. 384, 66 P.3d 305, and whether to hold a hearing. *In re Estate of Boland*, 2019 MT 236, ¶ 18, 397 Mont. 319, 450 P.3d 849.

¶31 Here, O'Connell had adequate time in which to conduct discovery and the record on appeal clearly indicates she participated in the process. Her contention now refers to the court's denial of her motion to compel forensic accounting and full financial disclosure, which occurred after the discovery deadline lapsed. We conclude the District Court did not violate O'Connell's due process rights because O'Connell had ample notice and opportunity to be heard afforded to her during the discovery window. On this record, there was no additional information O'Connell could have obtained from this untimely and largely duplicative motion. The District Court did not abuse its discretion in denying her motion to compel a forensic accounting and full financial disclosure.

¶32 Similarly, O'Connell's allegation of a phantom Exhibit 26 containing evidence of hidden assets is unavailing: Exhibit 26 was admitted in the proceedings below with no objection. Exhibit 26 appears to be another custodial account for the parties' children, governed by the parties' Stipulated Parenting Plan. O'Connell did not object to the admission of this exhibit and we will not address an alleged error now when she acquiesced to its introduction below. *Gray*, ¶ 20. Accordingly, nothing in the record suggests that O'Connell's due process rights were violated by the admission of Exhibit 26.

¶33 As for O'Connell's criticism of the District Court's handling of the abundance of her post-trial motions, this argument is again without merit. Under the Montana Rules of

14

Appellate Procedure, the argument section of an appellant's brief must "contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes, and pages of the record relied on." M. R. App. P. 12(1)(g). We will not consider unsupported issues or arguments. *Penado v. Hunter*, 2024 MT 216, ¶ 20, 418 Mont. 167, 557 P.3d 434 (citation omitted). As we have repeatedly said, we are not obligated to develop arguments on behalf of parties to an appeal, nor are we to guess a party's precise position, or develop legal analysis that may lend support to his position. *Estate of Harris v. Reilly*, 2025 MT 126, ¶ 16, 422 Mont. 383, 570 P.3d 522 (citation omitted). "While we generally encourage trial courts to make accommodations for parties choosing to represent themselves, such flexibility cannot give way to abuse." *Cox v. Magers*, 2018 MT 21, ¶ 15, 390 Mont. 224, 411 P.3d 1271 (quotation omitted). Any latitude given to self-represented litigants cannot be so wide as to prejudice the other party; to do so makes a mockery of the judicial system and denies other litigants access to the judicial process. *Cox*, ¶ 15 (quotation omitted). It is reasonable to expect all litigants, including those acting pro se, to adhere to the procedural rules. *Cox*, ¶ 15 (quotation omitted).

¶34 Here, O'Connell does not explain how the District Court erred in denying her post-trial filings nor does she ground her arguments in any cognizable law. O'Connell argues that the failure to properly serve or docket filings violated her due process rights; that the court may not adopt one party's proposed findings without independent analysis; and that the denial of discovery and incomplete disclosure constitutes reversible error. She

does not offer how the District Court erred except to request this Court examine the relevant filings in the record and ostensibly ascertain the alleged errors therein. In support of this argument, she cites three cases which appear to be fictitious. The citations offered lead us to other, unrelated cases. Although similarly named cases exist, they do not stand for the principles asserted in Appellant's Opening Brief. We will not consider O'Connell's unsupported arguments now.

¶35 Regardless, our review of the record indicates the District Court's accurately assessed O'Connell's post-trial motions as duplicative attempts to relitigate the underlying case. The District Court considered O'Connell's flurry of post-trial motions, twice warned O'Connell that her repeated filings approached "vexatious" behavior, and denied her motions in written orders. The court's decision not to hold hearings on these matters was not an abuse of discretion. O'Connell may disagree with the conclusions of the District Court, but on this record, we cannot say that the court issued its orders without considering her motions or otherwise violated her right to due process.

¶36 Having reviewed the record and the briefing on appeal, we categorically affirm the District Court. The District Court did not abuse its discretion under § 40-4-202, MCA, in equitably apportioning the marital estate—an apportionment that saw O'Connell receive significant compensation for her non-monetary contributions to the marital estate and her former spouse assume liability for the entirety of the debts held by the parties. The District Court properly considered the relevant criteria under § 40-4-203, MCA, and did not abuse

16

its discretion in denying O'Connell's request for maintenance. The District Court did not deny O'Connell's due process rights in conducting the proceedings.

¶37    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶38    Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M. BIDEGARAY
/S/ BETH BAKER
/S/ JIM RICE